*768 OPINION OF THE COURT
John H. Pennock, J.
By virtue of article I (§ 10, cl 1) of the United States Constitution "No State shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts”. The primary question here in this declaratory judgment action is whether section 220 of the Labor Law (the present New York State Labor Amendment of 1975; L 1975, ch 752) is violative of the Constitution when it requires that public works contractors pay whatever prevailing labor rates and supplements the defendant Industrial Commissioner of the State might determine during the time the work is being performed. Prior to this 1975 amendment, contractors were required to pay, during the life of the contract, labor rates established at the time of the contract award.
The plaintiff and defendant both move for summary judgment on the law which in effect is a request by both opposing parties for a declaratory judgment on the constitutional question and for judgment in respect to other basic contractual law questions raised by the plaintiff.
Before proceeding, the court addresses itself to all arguments, pro and con, in respect to inflationary impact and determines that any questions in respect to inflation are not questions properly before the court. The inflationary impact of the statute, if any, is a matter for legislative concern and this court has no power to employ such question in its determination of this dispute. In passing, however, it appears that inflation was a subject of sundry legislative and executive reports and comments when the bill was in the legislative hopper.
The plaintiffs are a group of public works contractors and associations with a primary interest in this Labor Law provision. There has been no question of standing raised. Associations are now accepted as litigants in legal questions which affect their membership. (Matter of National Elevator Ind. v State Tax Comm., 65 AD2d 304.) The New York State Conference of Mayors and Municipal Officials submits an affidavit supporting the plaintiffs but are not a party to the proceeding.
The parties are defined in the complaint and in the interest of brevity shall not be reiterated here. The complaint alleges the facts which are úncontroverted. Basically the facts are simple. The public works contractors either are presently *769 engaged in public work construction, have just completed such construction, or are such contractors who are consistently for many years engaged in public work contracts. Each of the contracts were awarded pursuant to law and each contract provided for the fixing of prevailing wages of the working force, which includes laborers and mechanics in the various trades, during the performance of the work by the contractors. Prior to the amendment of section 220 of the Labor Law, the law provided that the prevailing wages were fixed at the time the contract was let. Under the 1975 amendment, there is a built in "condition subsequent” in each contract which is section 220 of the Labor Law and amendments.
The pertinent portions of section 220 of the Labor Law which provide for a wage redetermination are set forth as follows:
"The 'prevailing rate of wage,’ for the intents and purposes of this article, shall be the rate of wage paid in the locality, as hereinafter defined, to the majority of workmen, laborers or mechanics in the same trade or occupation at the time the work is performed, as determined by the fiscal offficer in accordance with the provisions herein.” (Labor Law, § 220, subd 5, par a, as amd by L 1975, ch 752; emphasis supplied.)
"It shall be the duty of the fiscal officer, as defined in this section, to ascertain and determine the schedules of supplements to be provided and wages to be paid workmen, laborers and mechanics on each such public work, prior to the time of the advertisement for bids, and such schedules shall be annexed to and form a part of the specifications for the work.” (Labor Law, § 225, subd 3.)
"If the fiscal officer finds that the prevailing rate of wages or the prevailing practices for supplements as determined by the fiscal officer changes after the contract is let, he shall redetermine the prevailing wages and supplements, and shall notify the department of jurisdiction of the redetermination. The department of jurisdiction shall promptly notify the contractor of the redetermination, and such redetermination shall be deemed part of the contract for the work, to be effective as prescribed in the redetermination.” (Labor Law, § 220, subd 3, as amd by L 1978, ch 336; emphasis supplied.)
It is the plaintiffs’ contention as alleged in its complaint the imposition of wage redeterminations on plaintiffs’ contracts after contract award constitutes an unreasonable exercise of State power, and destroys the mutuality of the contract and *770 the contractual rights of one of the parties by allowing the other to unilaterally direct material changes in the contractual undertaking without consideration. Accordingly, section 220 of the Labor Law as amended is contrary to public policy in that it undermines the principles of mutuality and comity which provide the foundation for commercial transactions essential to the general welfare and prosperity of the people of New York. The Labor Law as amended also violates article I (§ 10, cl 1) of the United States Constitution which prohibits the States from passing any law which impairs the obligations of contracts.
The defendant’s answer places the basic questions in issue in respect to the statute itself. It does not question the alleged facts except that it avers that no contract predated the 1975 amendment. The record bears out that all of the contracts in question were awarded after the 1975 amendment. Thus, we have no flagrant infringement of an existing contract by a State statute impairing the obligations of a contract and thus no reason to trace the legal road back to the Dartmouth College case. (Trustees of Dartmouth Coll. v Woodword, 4 Wheat [7 US] 518.)
The plaintiff urges that the wage redetermination after the contract is awarded is an unreasonable exercise of State power. That it (the Labor Law amendment) virtually destroys the mutuality of the contract and the contractual rights of one of the parties by allowing the other to unilaterally direct material changes in the contractual performance without consideration. The question posed is whether the statute amendment is contrary to public policy. Does it undermine the principles of mutuality and comity which is the foundation for commercial transactions? The plaintiffs claim that public works contractors must agree to an "open-ended liability” as a condition to obtaining a contract award. The plaintiffs’ able counsel cites cases in its brief which succinctly traces the contractual law which in summary hold that both parties to a contract must be mutually obligated. The plaintiffs further argue that noncompensable wage redeterminations violate all principles fundamental to contract law. Factually here, the parties have mutually agreed and there are obligations on the part of both. The fact that a new wage scale may be issued by the Industrial Commissioner is contemplated by both parties. The plaintiff submits its bid with this prevailing condition subsequent. There is no evidence in the record *771 that bolsters the plaintiffs’ position of aggrievement. It prepares its bid and is at liberty to factor in any increase cost for labor as it does for other increases for the construction program ingredients. Apparently the plaintiff contractors take the position that the rates applicable at the time of the contract award were factored into their bid. This presents a question of fact which may not chill the present motions for summary judgment as a matter of law only.
The plaintiff credibly explores the Federal Davis Bacon Act (US Code, tit 40, § 276a et seq.). That 1931 depression law limits the contract wage rights to the time of the award. It was the first Federal law governing minimum wage. They claim the State has overreached in its superior bargaining position in this case. This is more an equity complaint which cannot be determined collaterally on this proceeding. (Necessary parties are not before the court.)
There is no disallowance of increased costs here. The parties as evidenced by the record have agreed to the increased costs and the manner that such increases shall be implemented. Therefore, in answer to the constitutional question posed, there is no impairment of a contract within article I (§ 10, cl 1) of the United States Constitution.
In conclusion, the court determines and issues a declaratory judgment pursuant to CPLR 3001 as follows.
That a redetermination on public works contracts constitutes a valid exercise of police power in conformance with public policy. Public policy is vague and variable and there are no fixed rules by which it is determined what contracts are repugnant to it. The courts have, however, approved the definition of public policy as the principle which declares that no one can lawfully do that which shall be injurious to or against the public good or welfare. We must gauge public policy by the law of the State (NY Const, art I, § 17) which provides for hours of work and the prevailing wages of those employed on public work construction; the Labor Law which mandates wage schedules; and the judicial decisions. It (public policy) is not based on opinions of the people but rather on the opinion of their elected representatives in the Legislature.
When public policy has been established by the Legislature, and it has spoken by statute as to what it shall be, the court cannot invoke its opinion otherwise unless there is a flagrant violation of the Constitution or common law, and it is then, and only in rare instances that the court may declare and *772 determine public policy. (See 10 NY Jur, Contracts, § 133 et seq.)
The redetermination by the Industrial Commissioner under authority of the Labor Law which determination is a condition of the public works contract is not an impairment of contracts in violation of article I (§ 10, cl 1) of the United States Constitution. The State meets the test that the contract provisions are in the furtherance of a legitimate end and is reasonable and appropriate toward that end. (United States Trust Co. v New Jersey, 431 US 1, petition for reh den 431 US 975.)
The subsequent changes in the wage rates by redetermination involve no impairment of contract when the contracts as here were entered into in legal contemplation that a change might be made in the prevailing rate of wages by the Industrial Commissioner, and the forfeiture and penalties are enforceable within the framework of the statute, even during the term of the contract. The State has a duty, and it has the prerogative to perform its normal and necessary functions of enforcement. "A State does not yield sovereignty merely because it makes a contract for public works.” (Armco Drainage & Metal Prods. v State of New York, 4 AD2d 366, 372.) The pertinent statutes and decisions of the commissioner may result in a policy amongst public works contracts of "let the contractor beware” but the resulting chaos, if any, in public works contracts, is not a field for opinion by the court.
That the amendment of the Labor Law does not contravene the principles of mutuality and comity of contract law nor are the public works contracts in focus "contracts of adhesion”. The latter legal label has not been applied to public bid contracts. It is virtually unrealistic legal theory to enforce an equity complaint of overreaching by the State in public bid contracts. The bidding process has to be a "take it or leave it” proposition. The bid system of awarding contracts pursuant to statute is not conducive to negotiation.
Further, the court determines that the first, second and third affirmative defenses are found as valid as a matter of law as heretofore set forth.
The fourth and fifth affirmative defenses are subject to the foregoing determination of declaratory judgment in favor of the defendant which render these defenses moot.
Summary judgment motion of the plaintiff is denied. (CPLR 3212.)
*773 All papers to defendant attorney to submit declaratory judgment and summary judgment as a matter of law as declared by the court. (CPLR 3001.)